**YELLOW TRANSIT FREIGHT LINES, Inc., and Hiram Orvel McMillan, Plaintiffs in Error,**

v.

**Mrs. Zella L. ALLRED, Defendant in Error.**

No. 37098.

Supreme Court of Oklahoma.

Oct. 23, 1956.

986

Edgar Maggi, Bristow, Truman B. Rucker and Bryan W. Tabor, Tulsa, for plaintiff in error.

Frank Seay, Seminole, Arthurs & Blackstock, Bristow, for defendant in error.

CARLILE, Justice.

..This action was filed by Mrs. Zella L. Allred against Buske Lines, Inc., Yellow Transit Freight Lines, Inc., and Hiram Orvel McMillan to recover damages for personal injuries suffered by her in an automobile collision. Prior to the trial the action was dismissed as to defendant Buske Lines, Inc. Plaintiff alleged in her amended petition that the Yellow Transit Freight Lines, Inc. was a corporation and that Hiram Orvel McMillan was the agent employee and truck driver of the said corporation; that in November, 1951, about 5:00 P.M., she was driving a Chevrolet sedan east on U. S. Highway 66, that as she approached Camp Creek bridge about six miles east of Stroud the defendant McMillan, driving an International truck belonging to the Yellow Transit Freight

Lines, Inc., approached from the east at a speed of about 40 miles an hour, and as she approached the bridge he drove the truck to the left of the center line of the pavement, causing the plaintiff to drive to the extreme south side of the pavement and stop before reaching the bridge; that the International truck owned by Buske Lines, Inc., driven by Troy Massey, approached from the west and ran into and against the rear of plaintiff's vehicle, knocking it forward and sidewise into the side of the Yellow Transit trailer, producing certain described permanent bodily injuries and damages which were alleged to have been directly and proximately caused by the joint concurring and active negligence of the defendants, and alleged that defendants were guilty of negligence in violating the state statute, Title 47 O.S.1951 § 121.3, subsection (a), which directs that a driver of a vehicle on the highway shall drive at a careful and prudent speed, having due regard to the traffic and other conditions, and at a speed that will enable him to stop within the assured clear distance ahead, and also violated Title 47 O.S.1951 § 121.4, subsection (b), which requires drivers proceeding in opposite directions to pass each other to the right and upon roadways having a width for only one line of traffic in each direction, each driver shall keep to the right of the center of the roadway. Plaintiff alleged that she had a life expectancy of 31.75 years, and prayed judgment in the aggregate amount of her alleged damages. The defendants filed an answer denying the allegations of the petition, and alleged that the accident was an unavoidable collision, occurring through no fault of theirs; that if they were negligent, which was denied, then plaintiff was negligent in that she failed to signal her intention to stop; that she stopped her vehicle on the travel portion of the highway and failed to have her headlight, taillight displayed, which negligence contributed to and caused the injuries complained of. And further alleged that it was the negligence of Buske Lines, Inc., which was the inter-

vening proximate cause of the accident and resulting injuries; that the independent and intervening negligence of Buske Lines superseded and insulated any negligence of the defendants in that the Buske Lines violated the law in driving its truck at such a speed that it was unable to stop within the assured clear distance ahead and violated the statute which prohibits the driving of a motor vehicle behind another more closely than is reasonable and prudent, and that it had insufficient brakes, or failed to use them, to stop its vehicle and avoid the collision with plaintiff, and further alleged that plaintiff's negligence, coupled with that of Buske Lines caused and contributed to the accident and but for which the accident would not have occurred.

Upon trial of the issues the jury returned a verdict for the plaintiff for the sum of $25,000, less $10,000, which the evidence showed the plaintiff had collected from the Buske Lines. Judgment on the verdict against the defendants was entered, and after motion for a new trial was overruled the defendants bring this appeal. The parties herein will be referred to as they appeared in the trial court. The plaintiffs in error, who were defendants in the trial court, present their assignments of error under four propositions. The first three are, in substance, (1) That the plaintiff's evidence failed to establish any primary negligence on the part of said defendants; (2) That there was no evidence that the alleged negligence of defendants was the proximate cause of the accident, and (3) That there was no evidence that the alleged negligence of the defendants was the proximate cause of plaintiff's injuries, and it is charged that the court should have sustained the defendants' demurrer to plaintiff's evidence and should have sustained defendants' motion for a directed verdict in favor of defendants.

The first three propositions stated by the defendants chiefly involve the question of the sufficiency of the evidence, or the lack of it, to establish negligence on the part of defendants and to show that it was the

proximate cause of the accident and resulted in plaintiff's injuries. The defendants, in support of their first proposition, quotes from the testimony of the plaintiff herself and that of Mr. Rambo, the Highway Patrolman, and cites decisions of this court which announce general rules to the effect that where the evidence fails to show primary negligence on the part of defendant, demurrer to plaintiff's evidence should be sustained; that the mere fact an injury occurred carries with it no presumption of negligence, and that the burden of proof is on the plaintiff to show negligence and establish it as the proximate cause of injury. The record shows that the accident in question occurred east of Stroud on Highway 66 at the west end of Camp Creek bridge. Plaintiff was asked in her direct examination to tell what happened immediately before the accident, including the accident, and she testified in part as follows:

"A. * * *. As I was next to this bridge I saw this Yellow Transit truck was much over his side of the line and he made no effort whatsoever to pull back over to his side of the highway. In fact, he kept gaining a little bit and was driving pretty fast, and so I began slowing down because I saw where he was driving and we both couldn't cross the bridge at the same time he was so far over the line. I started slowing down and he turned his lights on and off a couple of times and I stopped and when I did this Yellow Transit truck started on across the bridge right in the middle of the bridge and there was a Buske truck pulling a Milnot milk trailer coming from behind me and he hit the back of my car. And I felt two bumps, when he hit my car and when the Yellow Transit truck hit my car and when I came to my car was through the bridge and kind of jumping on the highway and I did have thought enough to stop the car because I knew it was in high."

She further testified as to the location of her car and the trucks, and other matters

concerning the accident, as illustrated and shown on a drawing of the highway and bridge, which bridge was 130 feet long by 18 feet wide. The drawing was explained by the engineer who prepared the same. On cross-examination she was asked:

"Q. You came up to that bridge and why did you stop? A. Because the truck, the Yellow Transit truck, was in the middle of the road and I couldn't pass him.

"Q. You took a position of safety when you stopped? A. It was safer than crossing the bridge with him, I thought.

* * * * * *

"Q. Where was the Yellow Transit truck when you stopped? A. When I stopped the Yellow Transit truck was right here just starting across the bridge, just right here ready to start across the bridge.

"Q. And when you stopped— A. When I stopped he came on and he never did pull over to his side.

"Q. You stopped when the Yellow Transit truck started on the bridge? A. When I saw that he wasn't pulling over, that he was still in the middle of the road and ready to go on the bridge I stopped, and when I stopped then he came on across in the middle of the bridge."

The other witness on behalf of the plaintiff who testified concerning the accident was Mr. Rambo, a former member of the State Highway Patrol, who arrived at the scene of the accident sometime after it occurred and testified that when he arrived the Buske truck was jackknifed on the west end of the bridge and there was a Yellow Transit truck on the west side of the bridge and the plaintiff's Chevrolet was to the east of the bridge, and that he did not observe any skidmarks; that the estimated speed of the trucks, as fixed by the parties, was 30 miles an hour. The Yellow Transit truck was on the north portion of the road, jammed into the Buske

truck and headed west on its side of the road. The plaintiff's car was damaged on the left side and rear. The defendant put in evidence the diagram portion of the description of the accident as prepared by the witness Rambo, based on the statement of the parties, and the witness Rambo said his statement or report of the accident was:

"Vehicle No. 2"—that is the Allred car—"was stopped in the traffic lane at the bridge because of approaching traffic. Vehicle No. 1"—the Buske truck— "approached from the rear and struck Vehicle No. 2, then skidded across the center line where it was *stuck* by Vehicle No. 3 which was coming off the bridge."

The defendant, in examining the plaintiff, developed some conflict between statements made by her in a deposition and that given at the trial. Such conflict goes only to the weight and creditability of the evidence of the witness and is a matter for consideration by the jury. Oklahoma City-Ada-Atoka R. Co. v. Kirkbride, 179 Okl. 428, 65 P.2d 1021.

We have read and considered the whole of the evidence relating to the accident and are unable to agree with the defendant's contention that there is a complete failure of proof of primary negligence on the part of defendants. On the contrary, we think the plaintiff's evidence was competent and sufficient to require its submission to the jury on the questions and issues involved, and that the court did not err in overruling defendant's demurrer to the evidence and motion for an instructed verdict.

"Where the evidence is sufficient to submit the cause to the jury on a question of fact, it was not error to overrule demurrer to the evidence and deny defendant's motion for a directed verdict." City of Ardmore v. Stuchul, Okl., 294 P.2d 308.

Pierce Oil Corp. v. Puckett, 99 Okl. 228, 226 P. 364, holds:

"Where there is any competent evidence offered by the plaintiff reasonably tending to establish plaintiff's cause of action alleged in his petition, and which would reasonably tend to support a verdict and judgment for plaintiff, defendant's demurrer to the evidence and motion for a directed verdict should be overruled."

"Where competent evidence is introduced on the question of negligence from which reasonable men might draw different conclusions, it is one for the jury, and under like circumstances the question of proximate cause is one for the jury." Mid-Continent Pipe Line Co. v. Price, 203 Okl. 626, 225 P.2d 176, 178.

"A motion to direct a verdict admits all of the facts and inferences to be drawn therefrom in favor of the party against whom the motion is directed, and leaves for consideration only such evidence as is favorable to the party against whom such motion is directed." Simpson v. White, 195 Okl. 375, 157 P.2d 913.

The defendants put in evidence the testimony of the driver of the Yellow Transit Freight Line truck which crossed the Camp Creek bridge shortly ahead of the Yellow Transit truck which was involved in the accident, also the testimony of the driver of defendant's truck which was in the accident and the testimony of the driver of the Buske truck which ran into the rear of plaintiff's automobile. The driver of the Buske truck testified that as he approached the plaintiff's automobile from behind at the west end of the bridge he put his brakes on and it seemed like the left front wheel grabbed and throwed the truck cross ways of the highway, and as it jackknifed the saddle tank—it is located right behind the cab—hit the rear of plaintiff's car and drove it across the bridge, and sideswiped the Yellow Transit trailer; that when he first saw the truck, as far as he could tell, it was right on him and on the proper side of the highway. The driver of the defendant's truck involved in the accident testified in part that he saw plaintiff's car stop on the pavement at the west end of the bridge

and he drove across on the north or right hand side of the bridge; that he did not get across the center line at any time; that when he was 20 or 25 feet from the west end of the bridge he applied his brakes and was traveling 4 or 5 miles per hour when his truck and the Buske truck came together.

The defendants concede in their brief that when there are disputed facts the question of negligence is a matter within the province of the jury, but further say there is an exception under the physical facts rule where the jury cannot find there was negligence when the physical facts show otherwise. Lee Way Motor Freight v. True, 10 Cir., 165 F.2d 38; Wise v. Wise, 175 Okl. 310, 52 P.2d 715, 717, are cited as applying such rule. In the case of Wise v. Wise, supra, it is stated:

"If circumstances or physical facts contradict the otherwise undisputed testimony, the reasonable inferences arising from said physical facts or other circumstances nevertheless constitute evidence themselves, and may be of sufficient weight and importance to override or outweigh the undisputed oral testimony."

As an application of the rule to the evidence defendants call attention that the Camp Creek bridge was 18 feet wide, the defendant's truck or trailer 7 feet 8 inches wide, and plaintiff's automobile 6 feet wide, and argue that it is apparent that if defendant's truck had been on the south, or wrong side of the center line of the roadway plaintiff's automobile could not have sideswiped the trailer and continued down the highway without striking the side of the bridge, and if the truck had been astraddle the center line of the bridge when plaintiff's automobile was struck, the resulting collision would have been head on with the truck and the automobile would have been knocked back south against the bridge. The combined width of the truck and automobile was 14 feet, or 4 feet less than the width of the bridge.

We do not consider the physical facts are such as to be conclusive on the point. It is a matter to be considered by the jury, along with other facts and circumstances.

■ The defendants, in support of their second proposition, submit that plaintiff failed to prove that there was any connection between defendants' alleged negligence and the accident and assert that the efficient cause of the accident was not defendants' alleged negligence but that the sole cause was the Buske truck running into plaintiff's automobile. We have considered, along with other cases relied on by defendants, the case of Norman v. Scrivner-Stevens Co., 201 Okl. 218, 204 P.2d 277, 279, from which the following language is quoted:

"Another consideration always to be given to the question of whether negligence is the proximate cause of an injury is whether such negligence as the efficient cause was connected with another cause to produce the injury, or whether the injury resulted from the intervention of some new and independent cause, which was neither anticipated nor reasonably foreseeable, and which operated independently of the original negligence and without which the injury would not have occurred."

The above quoted case is referred to in the case of Wilcox Oil Co. v. Bradberry, 208 Okl. 546, 257 P.2d 1096, 1097, in which case Bradberry sued the oil company to recover the value of a tractor destroyed by fire set out by plaintiff, and which got out of control. In an effort to stop the fire the plaintiff drove his truck and plow into an oil line, from which oil sprayed on the tractor and became ignited and destroyed the tractor. The oil company's easement required the oil line to be buried and the company argued that its failure to bury the pipe only served to furnish the opportunity for injury and was not the proximate cause, and that the injury could not have occurred except for the acts of plaintiff, which amounted to an independent intervention, unrelated and unexpected act which superseded the primary negligence. It was held in that case that the original or primary negligence was directly connected with the

acts resulting in the injury, and it is therein held:

"In order for an intervening cause to relieve one guilty of primary negligence from liability such intervening cause must have been the direct, sufficient and proximate cause of the injury and must entirely supersede the original act of negligence. If such intervening cause might reasonably have been foreseen as the natural and probable consequence of the condition created by the primary negligence the original wrongdoer will not be relieved from liability."

"Where two independent acts of negligence combine to produce an injury, which would not have occurred as the result of either act alone, both acts are the proximate cause thereof and either wrongdoer may be held liable for the entire result." City of Altus v. Wise, 193 Okl. 288, 143 P.2d 128, 129.

"Where, although concert is lacking, the separate and individual acts of negligence of several persons combine to produce directly a single injury, each is responsible for the entire result even though the act of one person alone may not be the cause of the injury." Wilson v. Shawnee Milling Company, Okl., 292 P.2d 147, 148.

In consideration of the principles of law announced in the preceding cases and assuming, as the jury must have found in arriving at its verdict, that the plaintiff was required to stop her car at the west end of the Camp Creek bridge in order to avoid a collision with defendant's truck because its driver approached and drove its truck astraddle or partially on the wrong side of the center line on the highway, we conclude that the evidence was sufficient to justify such finding by the jury, and find that the defendant's negligence, combined with the negligence of the driver of the Buske Lines, Inc. truck was the proximate cause of the accident and resulting injuries.

We further conclude that the acts of negligence of the Buske Lines, Inc. in driving its truck against the rear of plaintiff's car was not such an independent intervening cause as to relieve the defendant of negligence.

Under the defendant's third proposition, we have considered the argument and authorities cited in support thereof, and think the proposition and point urged is similar to the preceding proposition, and is sufficiently covered and controlled by the decisions there referred to, and deem it unnecessary to review or restate the same.

The fourth proposition presented by the defendants is:

"The court erred in admitting incompetent and prejudicial testimony over the objection of the defendants." The testimony complained of and set out in plaintiff's brief is as follows:

"Q. Mr. Rambo, in fact the only way for there to have been a collision between an automobile sitting on its own side of the road and the force was applied directly from the rear, the only way for there to have been a collision was for the Yellow Transit Truck to have been across the center line, isn't that correct?

"Mr. Tabor: Objection. That invades the province of the jury.

"The Court: Overruled.

"Mr. Tabor: Exception.

"A. If this car travels in a straight direction there has to be something in front of it.

"Q. In order for there to be a collision? A. Yes."

We think the question improper and objection thereto should have been sustained, because it related to a matter of common knowledge. We do not consider the case of Maben v. Lee, Okl., 260 P.2d 1064, which is relied upon by the defendant, as applicable or controlling on the question here raised. A reading of the syllabus and the opinion in that case shows that the holding, which required a reversal of the case, was based on evidence of a Highway Patrolman wherein he expressed his opin-

ions and conclusions, principally upon hearsay evidence, and purported to fix responsibility for such accident. The question and answer to which defendants objected are such that we think no material or prejudicial error arose therefrom. The question sought to elicit affirmative answer concerning the result which would arise from stated physical conditions. The witness did not answer directly the question, but qualified his answer, saying that if the car ran in a straight direction, and in effect, pointed out that the question did not take into consideration the fact that an uncontrolled automobile does not always travel in a straight direction when struck from the rear. The counsel, as shown by the record, re-phrased the question and again inquired of the witness if there could have been an accident under the conditions stated, but an objection was sustained to the latter question.

"A party may not complain of the admission of evidence over his objection, where other evidence of the same tenor was admitted without objection." Dippel v. Hargrave, 206 Okl. 26, 240 P.2d 1070.

We consider the rule stated in the next above case as applicable to the present case because the record shows that a question and answer very similar to the answer and question here complained of and immediately preceding the same was propounded and answered without any objection being made thereto.

The fourth proposition presented by defendants show no reversible error.

"In a law action the verdict of the jury is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury this court will not invade the province of the jury and will not disturb its verdict and judgment based thereon." Wiggins v. Sterne, Okl., 293 P.2d 603, 604.

"In a law action tried to a jury, this court will not weigh the evidence, but will examine the record to determine whether there is any competent evidence to support the verdict and judgment based thereon. If any competent supporting evidence is found the judgment will not be disturbed on appeal." Duncan Brothers v. Robinson, Okl., 294 P.2d 822, 823.

We find and conclude from an examination of the evidence and record that there was competent evidence sufficient to require a submission of the issues to the jury and that the court did not err in overruling the defendant's demurrer to the evidence, nor err in denying defendant's motion for an instructed verdict. We find no error in the record, and hold that the judgment of the trial court is sustained by the evidence and law, and the same is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J. and CORN, BLACKBIRD and JACKSON, JJ., concur.

HALLEY, J., dissent.